UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTWAIN WILLIAMS,

|  |  |
|---|---|
|  | **REPORT** |
| Plaintiff, | **and** |
| v. | **RECOMMENDATION** |

THE ONTARIO COUNTY SHERIFF'S DEPARTMENT,      **05-CV-0833S(F)**
JOHN STORER, personally and in his official capacity
 of an Ontario County Sheriff,
JOHN SHAFFER, personally and in his official capacity
 of an Ontario County Sheriff,
ERIC WOER, personally and in his official capacity of
 an Ontario County Sheriff,
SERGEANT COLBOURN, personally and in his official
 capacity of an Ontario County Sheriff, and
THE COUNTY OF ONTARIO COUNTY, NEW YORK,

                                 Defendants.
_____

APPEARANCES:          ANTWAIN WILLIAMS, *Pro Se*
                               03-B-2675
                               Clinton Correctional Facility
                               Box 2001
                               Dannemora, New York 12929

                               JOHN W. PARK
                               ONTARIO COUNTY ATTORNEY
                               Attorney for Defendants
                               MICHAEL G. REINHARDT
                               Assistant Ontario County Attorney, of Counsel
                               Ontario County Attorney's Office
                               27 North Main Street
                               4th Floor
                               Canandaigua, New York 14424-1447

## JURISDICTION

        This case was referred to the undersigned on December 9, 2008, by Honorable

William M. Skretny for report and recommendation on dispositive motions.  The matter

is presently before the court on Defendants' motion for summary judgment (Doc. No.

45), filed November 25, 2008.

## BACKGROUND

Plaintiff Antwain Williams ("Plaintiff"), commenced this civil rights action pursuant to 42 U.S.C. § 1983 on November 22, 2005, alleging that Defendants, including the County of Ontario, the Ontario County Sheriff's Department, and individual Ontario County Sheriff's Department Deputy Sheriffs John Storer ("Storer"), John Shaffer ("Shaffer"),[1] and Eric Woer ("Woer") and Sergeant Colburn ("Colburn") (together, "Defendants"), used excessive force in arresting Plaintiff on January 28, 2003, causing Plaintiff to sustain serious injuries. Plaintiff specifically challenges Defendants' use of a "distraction device" or "concussion grenade" and use of force in removing Plaintiff from his vehicle in arresting Plaintiff. Plaintiff seeks to recover monetary damages for injuries suffered as a result of the arrest, including physical injuries to his arms, legs and head, and nightmares and flashbacks.

An amended complaint, filed as of right on January 6, 2006 (Doc. No. 3) ("Amended Complaint"), clarifies some of the facts alleged in the original Complaint, but is otherwise essentially identical to the original Complaint. In a text order filed July 5, 2006 (Doc. No. 5), the claims were dismissed, with prejudice, as against Storer, Shaffer, Woer, and Colburn in their official capacities, as well as against the Ontario County Sheriff's Department, and Plaintiff's claims remain against Defendants only in their personal capacities.

---

[1] By order filed July 17, 2008 (Doc. No. 36), Plaintiff was permitted to amend the first name of Defendant Shaffer from "John" to "Gregory."

On November 25, 2008, Defendants filed a motion (Doc. No. 45) ("Defendants' motion") seeking to dismiss the action or, alternatively, summary judgment based on qualified immunity. The motion is supported by the attached Affidavit of Assistant Ontario County Attorney Michael G. Reinhardt, Esq. ("Reinhardt") ("Reinhardt Affidavit"), a Memorandum of Law ("Defendants' Memorandum"), and exhibits A through N ("Defendants' Exh(s). __"). In opposition to Defendants' motion, Plaintiff filed on December 17, 2008, a Response to Defendants' Motion for Summary Judgment (Doc. No. 49) ("Plaintiff's Response"), with attached exhibits A through F ("Plaintiff's Exh(s). __"). Oral argument was deemed unnecessary.

Based on the following, Defendants' motion should be GRANTED, and the Clerk of the Court should be directed to close the case.

## FACTS[2]

According to the undisputed facts, based on information provided by a confidential informant ("the informant"), Defendants arranged for the informant to purchase $ 200 of cocaine from Plaintiff on January 28, 2003, at 5:00 P.M., at a house on Jay Street in Phelps, New York ("the buy"). Because the informant had also advised Defendants that Plaintiff would likely be armed with a concealed weapon to use against the police, Defendants arranged for a van carrying an Emergency Response Team ("ERT"), to park behind Plaintiff's vehicle while the buy was in progress, and also parked a vehicle to block Plaintiff's vehicle from exiting Jay Street. After the buy, Plaintiff

---

[2] The Facts are taken from the pleadings and motion papers filed in this action.

returned to his vehicle and, before Plaintiff drove away, Defendant Colburn exited the ERT van and deployed a DefTec No. 25 Distraction Device ("the distraction device"), throwing the distraction device at Plaintiff's vehicle where it landed on the hood and exploded, producing a loud bang and a brilliant flash.

Plaintiff maintains he was temporarily blinded by the flash, causing Plaintiff to lose control of the vehicle and crash into a snowbank a few feet away. Amended Complaint ¶ 5.C. According to Plaintiff, immediately after the vehicle stopped at the snowbank, Defendant Storer smashed the vehicle's passenger-side window, while Defendant Woer, using the barrel of a submachine gun, smashed the vehicle's driver-side window, "sending fragments and shards of glass flying into [Plaintiff's] face." *Id*. Woer then reached through the broken driver side window and began hitting Plaintiff in the head, then attempted to extricate Plaintiff from the vehicle through the broken driver side window, before pushing Plaintiff back into the vehicle and opening the driver's door, through which Plaintiff was finally pulled out of the vehicle.

Defendants maintain that after the distraction device's deployment, Defendants approached Plaintiff's vehicle, intending to apprehend Plaintiff, but Plaintiff, instead of surrendering, attempted to drive away in the vehicle, which lunged forward and spun its wheels before striking a snow-covered curb. Defendants surrounded the vehicle and observed Plaintiff reach into his jacket with his right hand. Defendants then entered Plaintiff's vehicle where, to prevent Plaintiff from gaining further access to a concealed weapon, Defendants restrained Plaintiff, removed Plaintiff from the vehicle and placed him in Ontario Sheriff's Department's custody. During a search incident to Plaintiff's arrest, a loaded defaced semiautomatic pistol was recovered from Plaintiff's jacket

pocket, and crack cocaine was found in the vehicle.

Following Plaintiff's arrest, Plaintiff was prosecuted on criminal charges filed in connection with the January 28, 2003 arrest, and ultimately convicted on October 3, 2003, in New York Supreme Court, Ontario County, of (1) third degree criminal possession of a controlled substance with intent to sell, in violation of New York Penal Law ("N.Y. Penal Law") § 220.16.1; (2) second degree criminal possession of a weapon, in violation of N.Y. Penal Law § 265.03(2); (3) third degree criminal possession of a weapon that has been defaced for purposes of concealment, in violation of N.Y. Penal Law § 265.02(3); and (4) unlawful possession of marihuana in violation of N.Y. Penal Law § 221.05.[3]  On September 30, 2005, the New York Supreme Court, Appellate Division, Fourth Department unanimously affirmed Plaintiff's conviction, *People v. Williams*, 801 N.Y.S.2d 659 (App. Div. 4th Dep't 2005), and leave to appeal to the New York Court of Appeals was denied on November 22, 2005.  *People v. Williams*, 842 N.E.2d 486 (N.Y. 2005) (table).

On May 31, 2006, Plaintiff commenced an action in this court seeking federal habeas relief with regard to the conviction, asserting, *inter alia*, that his conviction was obtained through use of evidence obtained in violation of Plaintiff's Fourth Amendment right against unreasonable search and seizure because the Defendants' use of the distraction device and force to facilitate the arrest rendered the evidence used to convict Plaintiff "fruit of the poisonous tree."  *Williams v. Artus*, 2007 WL 2712338 (W.D.N.Y. Sept. 13, 2007).  On September 13, 2007, Plaintiff's petition seeking habeas relief was

---

[3] It is not clear from the record whether marijuana was found on Plaintiff's person or during the inventory search of Plaintiff's vehicle subsequent to his arrest.

dismissed. *Williams*, 2007 WL 2712338 at * 5.

## **DISCUSSION**

Preliminarily, the court observes that although Defendants' motion is denominated as seeking summary judgment, it was docketed as a motion to dismiss. As such, despite Plaintiff's *pro se* status, the court did not provide any notice to Plaintiff pursuant to Local Rule of Civil Procedures 56.2 and *Irby v. New York City Transit Authority*, 262 F.3d 412, 413 (2d Cir. 2001) (Doc. No. 58) ("IRBY notice"), advising Plaintiff of the consequences of failing to file any response in opposition to summary judgment, particularly the claims on which Defendants had moved, could be decided by the court, against Plaintiff, without a trial and based only on written materials submitted in support of Defendant's motion. "'The failure of a district court to apprise *pro se* litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal.'" *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)). Nevertheless, a district court is not required to explain the nature of summary judgment to a *pro se* litigant (1) where the pro se litigant's adversary 'has already provided the litigant with requisite notice, or (2) where the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment." *Vital*, 168 F.3d at 621 (internal citations omitted). Here, the record demonstrates that Plaintiff understood the nature and consequence of summary judgment, filing in opposition Plaintiff's Response, addressing each of Defendants' arguments on both legal and factual bases, and supported by numerous exhibits largely comprised of transcripts of portions of Plaintiff's

criminal trial relevant to the event of Plaintiff's arrest.  As such, no IRBY notice was required.

As stated, Plaintiff claims Defendants used excessive force in arresting Plaintiff in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures.  Amended Complaint ¶ 5.C.  Defendants seek summary judgment arguing that (1) Defendants are qualifiedly immune from liability on Plaintiff's § 1983 claim because it was objectively reasonable for Defendants to believe that the use of a distraction device and force in arresting Plaintiff did not violate Plaintiff's Fourth Amendment rights, Defendants' Memorandum at 13-15; (2) Defendants' use of the distraction device and force to arrest Plaintiff was justified and necessary for the safety and security of Plaintiff and others, *id.* at 5-9; and (3) Plaintiff has failed to demonstrate that the force used in effecting Plaintiff's arrest was "objectively sufficiently serious or harmful" and more than *de minimus*, *id.* at 9-13.  In opposition to summary judgment, Plaintiff argues that issues of fact as to the reasonableness of Defendants' use of the distraction device and force to arrest Plaintiff precludes summary judgment.  Plaintiff's Response at 1-11.

Although not addressed by the parties, based on the record, the court finds the court is without jurisdiction over this action under *Heck v. Humphrey*, 512 U.S. 477 (1994), as a judgment favorable to Plaintiff in the instant action would necessarily imply the invalidity of Plaintiff's criminal conviction, thus constituting an impermissible collateral review of the state court's disposition of Plaintiff's underlying criminal proceeding.  *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.2d 56, 62 (2d Cir. 2009) ("If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua*

*sponte*.").  Alternatively, Defendants are qualifiedly immune from liability on Plaintiff's Fourth Amendment claim.

1.     *Heck v. Humphrey*

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), civil actions challenging the constitutionality of a criminal conviction are barred where such action, if successful, would necessarily imply the conviction was invalid.  *Heck*, 512 U.S. at 486.  Here, Plaintiff's allegation that his conviction was predicated on an unlawful search and seizure in violation of Plaintiff's Fourth Amendment rights necessarily challenges the validity of Plaintiff's conviction as the fruits of the stop at issue were the basis of Plaintiff's weapons and narcotics convictions in state court.

Claims that excessive force was used during a search or seizure are analyzed under the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 388 (1989) ((holding claim that law enforcement officer used excessive force in making an arrest or seizure "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard.").  The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ."  U.S. CONST. amend. IV.

Ordinarily, suppression is the proper remedy when the government has seized evidence by deliberately engaging in activity that violates this right.  *Mapp v. Ohio*, 367 U.S. 643, 654 (1961) (holding "all evidence obtained by searches and seizures in violation of the Constitution is . . . inadmissible in a state court.").  In addition to requiring

probable cause for a search or seizure, the Fourth Amendment also governs the manner of executing a search or seizure, including use of force and destruction of property. *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (holding that manner in which law enforcement officials gained entry into home – by breaking a single window in the suspect's home – was reasonable and did not constitute a Fourth Amendment violation); *Dalia v. United States*, 441 U.S. 238, 258 (1979) ("the manner in which a warrant is executed is subject to later judicial review as to its reasonableness"). *See also Kerman v. City of New York*, 261 F.3d 229, 238-39 (2d Cir. 2001) (observing Supreme Court's instruction that "'*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . .'" (quoting *Graham*, 490 U.S. at 395 (italics in original))); and *United States v. Ankeny*, 502 F.3d 829, 836-37 (9th Cir. 2007) (observing manner in which warrant is executed, including use of force and destruction of property, is subject to judicial review for reasonableness under the Fourth Amendment). Further, because a distraction device explodes, producing a blinding flash and loud noise, its use has been held to be an application of force which must be reasonable under the Fourth Amendment. *Taylor v. Middletown*, 436 F.Supp.2d 377, 382 (D.Conn. 2006).

Where the manner of executing a search or seizure is unconstitutional, the court may decide whether there was a sufficient causal connection between the unconstitutional manner and the seizure of the person or evidence sufficient to warrant suppression. *Ramirez*, 523 U.S. at 71-72 & n. 3. These federal constitutional requirements also apply to state criminal proceedings given that the United States

Constitution provides for the minimum constitutional due process protection required under any state law or action.  *See McRedmond v. Wilson*, 533 F.2d 757, 764 (2d Cir. 1976) (observing that "state courts might well decide to expand protection beyond the minimum requirements of the federal Constitution.").

New York's procedure for litigating Fourth Amendment claims in criminal cases, *i.e.*, N.Y. Crim. Proc. Law § 710.20 (McKinney's 1995) ("§ 710.20"), has been held "facially adequate" to address Fourth Amendment claims.  *Capellan v. Riley*, 975 F.2d 67, 70 & n. 1 (2d Cir. 1992).  As relevant, § 710.20 provides that "[u]pon motion of a defendant who . . . is aggrieved by unlawful or improper acquisition of evidence and has reasonable cause to believe that such may be offered against him in a criminal action . . . a court may . . . order that such evidence be suppressed or excluded upon the ground that it . . . [c]onsists of tangible property obtained by means of an unlawful search and seizure under circumstances precluding admissibility thereof in a criminal action against such defendant. . . ."  Plaintiff thus could have asserted his Fourth Amendment excessive force claim as a basis for suppressing evidence in the state criminal proceedings.

As stated, Discussion, *supra*, at 7, *Heck* provides that civil actions challenging the constitutionality of a criminal conviction are barred where such action, if successful, would necessarily imply the conviction was invalid.  *Heck*, 512 U.S. at 486.  In *Heck*, the plaintiff state prisoner commenced a § 1983 action seeking monetary damages on the basis that the defendants, acting under color of state law, engaged in an unlawful, unreasonable and arbitrary investigation leading to the plaintiff's arrest, and then destroyed exculpatory evidence.  *Heck*, 512 U.S. at 479.  The Supreme Court held that

> [i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. <u>A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.</u> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 486-87 (italics in original; underlining added).

Significantly, *Heck* provides that more than an exhaustion of state remedies is required prior to commencing a § 1983 action challenging the legality of the plaintiff's confinement; rather "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence, impliedly attacked under § 1983, is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489. As the Court in *Heck* explained, requiring a plaintiff to obtain a reversal of his conviction or sentence prior to commencing a § 1983 action related to the conviction

> "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the [§ 1983] tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction."

*Heck*, 512 U.S. at 484 (quoting 8 S. SPEISER, C. KRAUSE, & A. GANS, AMERICAN LAW OF TORTS, § 28.5, p. 24 (1991) (bracketed material added)).

*Heck's* bar, however, applies only where a successful action alleging a constitutional

violation with regard to a state criminal proceeding would necessarily undermine the validity of the state court conviction. *Heck*, 512 U.S. at 487; *Jackson v. Suffolk County Homicide Bureau*, 135 F.3d 254, 256 (2d Cir. 1988). For example, a federal court's finding of a Fourth Amendment violation would not necessarily imply that a prior state conviction was unlawful if, despite the constitutional violation, the subject evidence was admissible based on such doctrines as independent source, inevitable discovery, and harmless error. *Heck*, 512 U.S. at 487 n. 7. Further, a dismissal under *Heck* is without prejudice. *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (disposition of a case on *Heck* grounds "warrants only dismissal *without* prejudice, because the suit may be reinstituted" should plaintiff's conviction be invalidated or reversed on any of the grounds articulated in *Heck* (italics in original)).

Analyzing the instant claim under *Heck*, *supra*, based on the record in the instant case, the court finds that a favorable decision on Plaintiff's underlying claim, *i.e.*, that the use of a distraction device and force in arresting Plaintiff on January 28, 2003, was excessive force such that the arrest was an unreasonable seizure under the Fourth Amendment, would necessarily imply that Plaintiff's arrest was unconstitutional, rendering evidence – the weapon and narcotics – obtained as a result of the arrest "fruit of the poisonous tree" which should have been suppressed, thereby calling into question the validity of Plaintiff's conviction on the state weapons and narcotics charges. Not only is the record devoid of any indication that Plaintiff's conviction has been invalidated, the record establishes that Plaintiff's petition sought federal habeas relief on the basis that Plaintiff's conviction was obtained in violation of his Fourth Amendment rights, *i.e.*, through use of evidence obtained subsequent to Plaintiff's

arrest, was denied.  *Williams*, 2007 WL 2712338.

Although the court is not in possession of the entire record of Plaintiff's state criminal conviction, in connection with his habeas proceedings, "Williams acknowledge[d] that he had the opportunity to present the same facts and the same arguments to the state courts" as asserted in his habeas petition, including the Fourth Amendment excessive force claim asserted here.  *Williams*, 2007 WL 2712338 at *2-3. Even assuming, *arguendo*, that Plaintiff failed to present his Fourth Amendment excessive force claim to the state courts as a ground for suppression at trial, then Plaintiff has waived such claim.  *See People v. Dean*, 750 N.Y.S.2d 207, 208 (4th Dep't. 2002) (defendant waived preclusion of statement on ground of lack of notice by failing to raise issue of voluntariness of statement at suppression hearing) (citing *People v. Brown*, 728 N.Y.S.2d 100, 102 (3rd Dep't. 2002) (intent and purpose of statute providing for precluding evidence from admission is fully satisfied when defendant is provided an opportunity to challenge admissibility of evidence), *lv. denied* 754 N.E.2d 206 (N.Y. 2001)).  Accordingly, Williams either has already litigated this matter in connection with the criminal proceedings relative to his state court conviction, or has waived his right to do so.  However, even if Plaintiff had waived his right to contest the search and seizure based on the use of excessive force, to now allow Plaintiff to litigate that question in this § 1983 action nevertheless would imply, if successful, the invalidity of his state court conviction, contrary to the *Heck* doctrine.

In particular, were it not for use of the distraction device and force, Plaintiff would never have been arrested on January 28, 2003.  Based on the informant's advice that Plaintiff was armed with a handgun which Plaintiff was prepared to use to avoid arrest,

to ensure the safety of the law enforcement officials involved in Defendant's arrest, it was necessary to initially distract Plaintiff to prevent him from accessing the weapon while law enforcement officers approached Plaintiff's vehicle.  Based on the law enforcement officers' observation, upon reaching the vehicle, of Plaintiff reaching into his jacket as if to retrieve a weapon, it was necessary for Defendants to forcibly extricate Plaintiff from his vehicle.  Nor does the record indicate the seizure of the incriminating evidence at the time of the stop and search would have been yielded in a subsequent inventory search or as a result of inevitable discovery, as exceptions to the Fourth Amendment.  *See Heck*, 512 U.S. at 487 n. 7.  Simply put, but for the use of the alleged excessive force, Plaintiff would not have been stopped and the incriminating evidence would not have been seized at that time.

Significantly, the weapons possession count of which Plaintiff was convicted pertains to Plaintiff's possession of the weapon which necessitated the use of the distraction device and force in arresting Plaintiff.  Plaintiff does not allege, and the record does not support, that any force, excessive or otherwise, was used to seize the drugs in Plaintiff's possession, following Plaintiff's arrest, on which the remaining three counts are predicated.  Under these circumstances, any finding that Defendants used excessive force in arresting Plaintiff on January 28, 2003, would necessarily imply the invalidity of Plaintiff's convictions for possession of the drugs and weapon.

As such, *Heck* deprives the court of subject matter jurisdiction over Plaintiff's Fourth Amendment claim, and the case should be dismissed without prejudice.

## 2.     Qualified Immunity

Alternatively, Defendants are qualifiedly immune from liability on Plaintiff's Fourth Amendment excessive force claim because the undisputed facts establish that Defendants' decision to use the distraction device was not a decision that no officer of reasonable competence would have made in similar circumstances. *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

Qualified immunity shields law enforcement officials who perform discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable prison official would have known. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 815 (2009) (citing Harlow *v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Washington Square Post No. 1212 v. Maduro*, 907 F.2d 1288, 1291 (2d Cir. 1990). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 129 S.Ct. at 815 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 129 S.Ct. at 815 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). It is important to resolve immunity questions at the earliest possible stage of litigation to preserve the purpose of qualified immunity, *i.e.*, ensuring that insubstantial claims against government officials are resolved prior to discovery. *Id.* (citing cases). *See Saucier v. Katz*, 533 U.S.194, 200 (2001) ("Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." (internal quotation omitted)).

Resolution of a government official's qualified immunity claim involves a two-

prong analysis, including (1) whether the plaintiff has alleged a deprivation of a constitutional right; and (2) whether such right was clearly established at the time of the defendant's alleged misconduct. *Pearson*, 129 S.Ct. at 815-16; *Saucier*, 533 U.S. at 201. Although both prongs must be established, it is within the court's discretion which prong should be addressed first in light of the circumstances of the case at hand. *Pearson*, 129 S.Ct. at 818.

Here, with regard to the first prong, it is not disputed that Plaintiff's claim that Defendants used excessive force[4] in effecting Plaintiff's arrest alleges a deprivation of Plaintiff's Fourth Amendment right precluding unreasonable search and seizures. *See Graham*, 490 U.S. at 388 (establishing general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective reasonableness standards). As such, the court considers whether the particular right allegedly violated was "clearly established" at the time of the alleged violation. *Saucier*, 533 U.S. at 202.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("the right allegedly violated must be defined at the appropriate level of specificity

---

[4] The court notes the record is devoid of any evidence establishing the injuries Plaintiff suffered during his arrest were anything more than "*de minimus.*" *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (observing with regard to plaintiff who suffered minor injuries that "[a] *de minumus* use of force will rarely suffice to state a Constitutional claim."). *See also Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."). Nor did Plaintiff move pursuant to Fed. R. Civ. P. 56(f) for an opportunity to take discovery to obtain evidence of his claimed injuries. *See McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) (all litigants, including those proceeding *pro se*, are obligated to comply with court orders and the Federal Rules of Civil Procedure); *see also* Local Rules Civil Procedure, WDNY, Rule 5.2(e) ("It is the responsibility of all pro se litigants to become familiarity with, to follow, and to comply with the Federal Rules of Civil Procedure . . . .").

before a court can determine if it was clearly established).  Even if the right at issue were clearly established, if it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity.  *Saucier*, 533 U.S.at 201-02; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996); *Van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d 863, 865-66 (2d Cir.1990); *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987).  "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed."  *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir.1996) (internal quotation marks omitted).

In particular, a defendant is entitled to summary judgment based on qualified immunity if the court finds that the asserted rights were not clearly established, or "if the defendant adduce[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not violate a federally protected right."  *Robison*, 821 F.2d at 921 (internal quotation omitted).  Stated another way, a defendant is entitled to qualified immunity under the objectively reasonable standard if "officers of reasonable competence could disagree" on the legality of the defendant's actions.  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

Where, however, the objective reasonableness of an officer's actions depends

on disputed facts, summary judgment based on qualified immunity is properly denied. *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991); *Brawer v. Carter*, 937 F.Supp. 1071, 1082 (S.D.N.Y. 1996). Provided that no factual issues are disputed, the application of qualified immunity to the facts is a question of law for the court to decide. *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990).

The circumstances presented in the instant case establish that no reasonable juror, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiffs, could conclude that it was objectively unreasonable for Defendants to believe their actions in arresting Plaintiff, including use of the distraction device and force to remove Plaintiff from his vehicle, violated any federally protected right. Specifically, it was objectively reasonable for Defendants, acting upon informant's advice that Plaintiff was armed with a handgun which Plaintiff was prepared to use to avoid arrest, to believe it was necessary, to ensure the safety of the law enforcement officials involved in Defendant's arrest, first to distract Plaintiff to prevent him from accessing the weapon while law enforcement officers approached Plaintiff's vehicle and, upon reaching the vehicle and observing Plaintiff reach into his jacket as if to retrieve a weapon, to forcibly extricate Plaintiff from his vehicle. Moreover, the use of a distraction device in similar situations has upheld by other courts as not in violation of the Fourth Amendment's proscription against excessive force. *See, e.g.*, *United States v. Boulanger*, 444 F.3d 76, 80 (1st Cir. 2006) (affirming district court's denial of defendant's motion to suppress evidence based upon allegation that police officers used excessive force in searching apartment, including tossing distraction device into apartment, because defendant, an armed robbery suspect with history of violent crimes, was also

suspected of selling drugs out of apartment to be searched and was possibly armed, and police officers first determined there were no children or elderly persons present in the apartment); *Bantum v. City of New York*, 2001 WL 705889, * 2 (S.D.N.Y. June 21, 2001) (granting summary judgment in favor of defendant police officer on qualified immunity grounds because defendant's use of distraction device was not decision no officer of reasonable competence would have made in similar circumstances, *i.e.*, where defendant police officer discovered persons, reportedly heavily armed and wearing bulletproof vests, suspected of armed robbery near scene of the robbery, hiding in storage room loft area, accessible only by ladder and providing suspects with tactical advantage over law enforcement officers based on elevated and concealed position in loft, and distraction device was intended to draw suspects from hiding area to facilitate nonviolent apprehension). *Compare Taylor*, 436 F.Supp.2d at 383-84 (denying qualified immunity to police officers where genuine issue of material fact existed as whether police officers' actions, including throw distraction device directly at unknown occupants of apartment, thereby injuring occupants, were objectively reasonable). Based on the undisputed facts presented in the record, no reasonable police officer would have concluded that use of the distraction device and force to extricate Plaintiff from his vehicle to effect Plaintiff's arrest was constitutionally unreasonable.

Accordingly, on this record, Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claim.

## **CONCLUSION**

Based on the following, Defendants' motion (Doc. No. 45) should be GRANTED, the case should be DISMISSED without prejudice for lack of jurisdiction, and the Clerk of the Court should be directed to close the case. Alternatively, Defendants' motion (Doc. No. 45) should be GRANTED based on qualified immunity, and the Clerk of the Court should be directed to close the case.


Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      July 1, 2009
                Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Petitioner and the Respondent.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July 1, 2009
            Buffalo, New York